Good morning. May it please the Court. My name is Stephen Brown and I am with the Missoula, Montana firm Garlington Lawn & Robinson. We represent the appellants Arnold Bakie, Optima Inc., and Frank DuVal. Bakie is the way you pronounce it. Yes, Your Honor, it is Bakie. I would like to begin with the issue of Colorado River abstention because it is dispositive of the case. In 2007, Montanore sued the owners of four unpatented mining claims in Montana State District Court, and among other arguments that Montanore made in that case was that the claims that are now owned by the appellants were invalid. Montanore wanted to invalidate those that crosses those claims. That State District Court action went on for about six years, and State District Court decided summary judgment motions in June of, I'm sorry, in March of 2013. Counsel, may I interrupt right there? I think the story is important, and there's a there's an indication in the file that at some point in that first six-year period, I think it was in the first six-year period, there was a bit of confusion in the BLM file about where the claims were located and whether Mr. Bakie's claims were really on the, you know, co-located with the addit. So I just want to know, well, I guess I have two questions. One is when it was all shaken out, there indeed the addit is on the claims, is that right? The addit passes through the claims, Your Honor. Okay. The BLM, which administers mining claims, has never raised that issue. That was an issue that actually came up in the condemnation proceedings. Right. It didn't ever come up in the State Court litigation. That's never been an issue in the State Court litigation. State Court determined the case, the claims were valid. Well, this isn't about validity. I just want to know, is the addit co-located with Mr. Bakie's claims, and is that undisputed in this case? That is undisputed. The addit passes through those four unpatented mining claims. Okay. My only other question about this, which is kind of a tangent, but this case is taking a really long time, and I'm trying to figure out whether or not the confusion about, if there was confusion, about the location of those, these claims contributed to that. Your Honor, I don't believe it did. The State Court case had five years of discovery before they went to summary judgment. There's a very extensive factual record developed in the State Court case. There was the opportunity to look at that, but that wasn't an issue. It didn't become an issue until the company... Okay, pardon the interruption. Thank you, counsel. So when the State Court issued a summary judgment ruling in March of 2013, it determined the claims were valid. Three months later, Montenor filed the federal, filed a state condemnation case in federal court on diversity grounds. There's no federal condemnation issue. It's just a state condemnation claim on diversity, and it was filed because Montenor didn't like the rulings it was receiving in state court. It was a reaction to the state court rulings. That's why the case was filed in federal court. And that was filed three months after the summary judgment was handed down in the state court, is that right? That's correct, yes. Did, did Montenor ever try to file a comparable private condemnation action in state court? No, it did not file any comparable. It made the decision to try to invalidate the claims based upon whether they were valid under Montana state law, and that was the tactical decision it made at the time. Condemnation didn't come up until the federal court made, or the state court made the determination the claims were valid. Okay, and, and that's the only place, the federal district court is the only place the condemnation claims were filed? Yes, there's no cause of action in When this circuit evaluates abstention, Colorado River abstention, it evaluates eight factors, but the first factor is the dispositive factor in this case, and that's what the court asked for supplemental briefing on, and the question there is which court first assumed jurisdiction over the property that's at stake. The property that's at stake is these four mining claims. There's no dispute about that. It was at issue in the state court case, it's at issue in the federal condemnation case. Mining claims are real property. There are form of real property. There's plenty of Montana case law about the rights that somebody has when they own an unpatented mining claim, so their property in the fullest sense of the word. So this is an in-rem action such that Colorado River abstention would apply? Yes, Your Honor, it is an in-rem action. It involves title of property, and that's evident from the very, the title to the, the federal court case is a case against the property itself plus the parties that have an interest in that property. So by naming the property itself, it is an in-rem proceeding. By determining that the claims were valid in state court, that was an in-rem proceeding as to the validity of that property and, and, and who owns that property. And Montano doesn't seem to dispute this. Instead, its dispute is more based on parallelism and whether the state court case is parallel to the federal court case or not. Let's assume just for a moment that this barge is so far down the river we really can't do anything with the Colorado River abstention. What's your best argument that Montana code annotated section 70-30-111 sub 1 sub c covers a proposed future public use and not just a current public use? The public use is the use of unpatented mining claims. I mean, that is a public use. I'm not exactly sure I understand. What I'm, what I'm trying to find out is that my understanding is that you were basically saying that one element in the condemnation action that was not properly considered was that you had a future proposed public use. It didn't have to be a current public use. Did I misunderstand? Okay, I understand the question now. The public use is actually use, that's an element of the Montana condemnation statute that give us private parties rights of condemnation normally enjoyed by only the government. The public use is mining or use of a somebody owns a mining claim. They either are using it or can use it. It doesn't actually... That of course gets to the point I'm talking about. As I understand that your position is that even though your clients are not doing anything with it right now, that the fact that they can do something for with it satisfies that prong of the statute. Is that correct? That is correct for purposes of, the condemn. The public use that was being made of this property, there was litigation going on while this case was pending and that's partly the reason why the mining claims weren't used is because there was a state court litigation going on. That state court case had to be resolved in order to figure out whether they could... The claims have never been used. My understanding is it's uncontested. The POPs claims 12 through 15 had never been accessed. Is there... The history is they were under a mining lease for a long period of time. They were not actually controlled while they were under that mining lease. That mining lease then expired in the early 2000s. There was a short period of time. Litigation was... About five years, right? Yeah. Four or five years? About four years. Litigation was instituted. Part of the litigation was whether there was access to these claims or not, whether they're valid or not. But sir, can I... Your time is ticking. So it seems to me this is not your strongest point because I think it's uncontested. Your client didn't use the claims. And even if they had or even if they plan to, on this particular point, I appreciate that it's Montana's burden, but they have a pretty strong argument that their proposed use is a greater public use, right? There's nothing in the Montana statute that says you balance public uses. So Montana isn't actually... They just have an adit that was the lease. They're not actually using it either. So the court... Well, but they're trying to. They're trying to use their claim. And I mean, I think we understand those facts. And it just strikes me that particularly if you're right that there isn't a balancing that is required and all they have to do is make the showing, surely they've made the showing for public use, right? There's no dispute that that is a public use. The question is which public use is more necessary. Well, that is the balancing. I understand, Your Honor. And the balancing that the court engaged in was economic balancing, which mine would essentially make more money. Well, and employ more people. Right. We've read that briefing. And this is a taking of private property. There's nothing in Montana law that says you balance in order to determine which is more necessary. I see. I see your point. I appreciate that clarification. Thank you. I'd like to return just to the Colorado River issue because it really does dispose of this entire case and puts it back into state court. What Colorado River says when you get look at the parallelism aspect of it is whether the state or the federal court case is a spinoff of more comprehensive state litigation. This was a spinoff of the state court litigation because it was started immediately after. That's what the Nekashvi-Marciano case says is what the court looks at when it determines. And it just has to determine that the cases are substantially similar. Parallelism is not actually the operative word under Nekash. It's actually whether they're substantially similar or not. There was also a note in the Nekash case that says whether the federal court case is reactive to rulings in state court. That certainly happens. So that takes care of the And then in the supplemental brief that Mottnor filed, it talked about whether the cases involve the same dispositive issue. That's not actually the test. The test is whether the proceedings involve the same subject matter. And the subject matter that's at issue here is the unpatented mining claims and access to those unpatented mining claims. That's at issue in the state court. That's what the state court ruled on. That then became an issue in the federal court And then in the condemnation case, for purposes of evaluation, the subject matter is exactly the same. It's access through those. That then permeated the condemnation hearing in terms of whether the claims were valid or not. And the problem with the hearing was there was all this evidence about or attempts to introduce evidence about what happened in state court. And the federal court said that could not be introduced and became more and more problematic as the case went forward in terms of what could come in and what couldn't come in when the state court had ruled that those mining claims are valid. Let me ask you this, counsel. Obviously you would like us to apply the Colorado River abstention doctrine and do away with the federal or stay the federal action. Let's assume for just arguendo that we don't do that. And let's say that the condemnation goes through. What then becomes of the state action? The state court used the word delayed. It is scheduled for trial. It still needs to go through a trial on the remaining issues. The state court case assumes that those mining claims are valid. There's going to be a case involving whether there was a trespass prior to the district court entering its preliminary injunction order. So there still is a tort claim based on the fact that those claims are valid mining claims. And I get that. My question is, if the claims have been condemned in the federal court, in other words, if we let that go forward and putting me aside to the jury question for a moment, but just say we let it go forward and the condemnation action is completed. You no longer own those. They are condemned. So then what happens to the state action? Does it go away? What happens to it? No, Your Honor. It does not go away. And there's two reasons. One is the only thing that's being condemned is an access right through those claims. It's not the claims themselves that are being taken over in the case. And the second is there still is a remedy for purposes of what happened prior to the condemnation order. There are tort claims that involve that. And so that still has to be tried. So the trespass, if you will, continues. It's a live cause of action. Well, that will be determined depending on how the condemnation is resolved. If it's vacated, the trespass continued. If the condemnation is upheld, then the trespass stopped at the point that the district court entered its preliminary injunction on that. So there still is a . . . I just want to touch real briefly on the issue of the jury trial because Montana law does provide that there is a right to a jury appeal. That was not allowed by the district court. The district court ruled that there wasn't enough evidence to support your valuation claim. We believe that there was evidence, and that goes back to the state court action. Your time, you're down to a minute. So can you just tell me what was your evidence, please? The evidence was the state court had ruled that the claims were valid. That evidence didn't get in front of the condemnation commissioners. That evidence could have gotten further condemnation commissioners, but it wasn't. Is that the only evidence of value? The other evidence of value was the evidence we attempted to introduce in terms of the replacement cost method and the income method of valuation, both of which were . . . there were rulings against us based on the fact that . . . Well, one of them was deemed an improper method, right? It was deemed to not have enough evidence to support the method, and that was partly because of a protective order that was entered by the court in terms of the replacement cost method and whether . . . it had to do with the nature of the claims under federal law, whether they're actually real property, and that's an issue of Montana law, and we cited the cases in our briefing about Montana law on that issue that say there is an interest in that kind of property, and there is an ownership in that at it itself, and I see I'm out of time. Thank you. It's about the income valuation method. Could you just briefly tell me how would that apply in this case? Yes, Your Honor. The income method is based upon the fact that there was a mining lease in place. The mining lease actually didn't have a termination date. It didn't depend on how many claims there were. It set a value for leasing those mining claims. That was in place on these mining claims previously, and so the income method was . . . there was a stream of income for the use of these claims while they were being leased, while the attic was built, and that would supply the evidence of a stream of income that could be realized by these parties. Those were the leases that Montanora itself had, right? Its predecessor, Noranda, had had those leases with same parties, and then they terminated those leases. I understand. Thank you. Thank you, Counsel. Very well, we'll hear now from Mr. Sturmitz. Yes, Your Honor. Good morning. Good morning. With me at counsel table is Joshua Cook, one of my law partners who's helped on this case. I'd like to briefly address the abstention argument right up front since that's received so much attention, and simply say that we do believe that the analysis under Colorado River, the first prong of that as we have briefed, ends the inquiry. The Lusardi . . . It ends in what way? The first prong of despite the effort to say otherwise, about the identity of the issues in the state versus the federal case and parallelism. Counsel, it's not. It's not. And your brief acknowledges that, I think, on the first page. Right? That's not our case law. Under Colorado River, Your Honor? Right. Identity is not required. Well, the first prong of Colorado River has to do with prior exclusive jurisdiction. And as this court has applied it in many other cases that are cited in our brief, the Intel case, the Nakash case, and the American International Underwriters case. And that prior exclusive jurisdiction doctrine has to do with comparing the issues between the state court case and the federal court case. Well, it's the nature of the issues involved. And you're really talking about the same property. That you're talking about these mining claims. The state court says they're valid. You say . . . To me, this is a classic example of forum shopping. You didn't like what you got in the state courts. You went to the federal court to try a different approach. But it's the same properties, same issues. Why shouldn't the abstention doctrine apply in this case? Several reasons, Your Honor. We don't dispute that we do not agree with the decisions out of state court. I mean, that's the fact. In fact, that decision that has been advanced as more or less a final judgment is an interlocutory decision that's still subject to appeal. Which we will, if we have the opportunity, do. But you're not talking about property in the classic sense here, first of all. You're talking about ownership of the interest in unpatented mining claims. And that ownership, the scope of that is determined by the presence of valuable and commercial quantities, minerals, in those claims. But I think Judge Smith's point is whatever the interest is, it's the same interest being litigated about in state and federal court. No, Your Honor. We understand there's the validity issue. And I actually do have a question about that. The state court's really been focused on the validity of the claims. But since we're here, is it right that your client didn't file a condemnation action in state court? That's correct. And is it right that when you filed the condemnation action in federal court, it would have been too late to add that claim in state court? It had been pending six years. No, it would not have been too late, Your Honor. State court action had been pending six years. It had. I mean, too late perhaps in the sense of whether the judge would allow us to amend the complaint. That's my question. So I'm getting back to Judge Smith's point about forum shopping or, and I know that's a pejorative term, and what you're trying to do is get your client to a place where he can be in business. I get that. But it concerns me, as a former state court judge, that the claim wasn't brought, for whatever reason, in state court. And by the time it was brought in federal court, before we talk about forum shopping or judge selecting or anything else, it just seems to me to be claim splitting. You couldn't have brought it there. So why should you be allowed to bring it in federal court? Because unless there's a reason, unless there's a valid reason to abstain, there's no justification for not doing it. That is the point, though. It's a Colorado River issue of whether or not your client shows its claims, chose to go forward there, six years in, it shifts gears. Why shouldn't we be very concerned about that? Because if, let's say, you reverse an order that the federal court abstains in one way or another from our, for our condemnation proceeding, that will have no impact on claim validity in state court. And I think, I hope we're all agreed, that the only issue that really potentially overlaps and one of concern is claim validity. Yeah, but you're going to the point that that there are parallel claims, right? And whether they're valid or not, you can still condemn them. Absolutely, I agree with that. But my question is different. My question has to do with doing an end run around the state court procedure. It was too late. But we won't, we won't, we're not doing an end run in the sense that, while it grants us access through their claims, the condemnation, that was our goal, that state court case will still be able to rule on the validity of those claims, as if we never brought this. Counsel, all of the reasons, all of the, all of the policy reasons, and I don't need to debate this and use up your time, but all the policy reasons that forbid claim splitting in the first place, like judicial efficiency and getting the witnesses together and minimizing the risk of inconsistent results and the time and expense and delay and all the rest of it, really suggests that all the claims should be brought at one time. And your client chose not to do that, and that is entirely your client's business. But it does leave us, I think, when we talk about Colorado River, with the added concern of, it just seems to me pretty clear, you wouldn't have been allowed to go forward in state court with this claim, but you filed it in federal court. And so we're right back in the same soup. Well, I think, Your Honor, I mean, the thinking, if we're sort of not talking strictly speaking here about Colorado River, but just the didn't file it, but our preceding law firm did, the idea was that the appellants were making a lot of noise about trespass and causing a lot of public discourse about the nature of our ownership up there and our access to our patented claims. And so the thinking, for better or worse, was this was suited for declaratory judgment action to declare the nature of our respective ownerships. Well, actually, the invalidity of the state court claims. There were tort claims that went along with that, going both ways. The state case became a morass. There's no question about it. It still is. And so we don't, we don't know for sure whether the state court would let us file an amended pleading or not. We haven't honestly asked. I think it may be a problem, but we don't know. So the decision was made to, in the interest of moving the project forward, to go with federal court. The fact that, and our belief was that the federal judge would be, or the federal proceeding would determine the right to take and the amount of compensation without regard to a question of validity with one exception. And that's what the Commissioner's Report reflects, which is this is an unremarkable case when it comes to the measure of compensation in the end, because it's a before-and-after comparison before taking and after taking, just like any other condemnation. And due to the lack of evidence and the fact that there was this proceeding going on in state court, that would affect how a third-party reasonable buyer might look at the value of these claims. And primarily, of course, these claims had no value in terms of mining value due to the fact there's no minerals. Let me just interrupt for just a second, counsel. As you well know, there is a state statute that permits an appeal to a jury in this situation. That didn't happen. Why? Your Honor, the reason why is that, of course, as you know, the Montana law applied here in substantive terms and Title 70-30-304 under our Condemnation Statute says that an appeal must be tried in the same manner as other civil actions. And so that means that the rules of civil procedure apply like they normally do. That's how the case was tried all along. And those rules include the rules we brought our alternative motions under after the Commissioner's report, Rule 50, Rule 56, Rule 59. And... Are you saying they didn't ask for a jury? No, I'm saying they asked for a jury, Your Honor, just like any other case where the plaintiff, let's say, wants to have a jury, is entitled to a jury, but the court precludes that because of a summary judgment argument. The right to a jury is not totally absolute. Wait a minute. This went to the Commissioners. It's not a summary judgment, is it? Well, the court had to take the action of approving that report. The Commission sits like a master, essentially. Right, I get that. Okay. But the bottom line is, at least if I understand your statute, it suggests that there is a matter, as a matter of right, that the decision of the Commissioners can be appealed to a jury, at least as I read the statute, as a conditioned precedent to the court ruling on whether it agrees with what was done. That didn't happen here, and that's what I want to find out is why it didn't happen. I'm sorry to interrupt. Yeah, maybe I understand your question a little more clearly, Your Honor. The timing of this, where the District Court has to approve or pass on the Commissioners' findings like it would any other master, took place in the same order that granted our alternative motions to dismiss, basically. Sorry, to dismiss the appeal? Yeah, to dismiss the appeal. So in one, is that right, that the judge accepted the, I guess it's a recommendation like a master's R&R, maybe, accepted that, so that's a judgment, if I can think of it that way, and then it was the Montana law would have given the right to appeal that to a jury trial, and in the same order the judge granted, was it a written motion? They were, they were briefed, they're fully briefed, they're in the record. Okay, so can you help me find that motion? I think what I can refer you to right here at hand is the order. Okay, I think I've seen the order. The order, and I don't have the motions right in front of me, Your Honor. Okay, we'll find them. But they were made in the alternative because the, you had this situation where essentially we had gone through the equivalent of a jury trial, I recognize strictly speaking, literally it's not, but where the court had sat and presided over the evidentiary rulings and instructed the commission like it would a jury, and so we didn't, due process seemed to be satisfied, and so, but then we were dealing with an appeal right that would that de novo basically, and so we did not, we brought it under the various rules, all of which though deal with the same discretion on the part of the district judge, which is not to allow a jury to go forward, whether it's an appeal or whether it's an original case, that you have the right to a jury hearing. But if counsel, with respect, 70-30-304 sub 1 is a statute that gives an express right of appeal in just this kind of situation. Are you saying that because a district judge has the right to, if you will, make a decision without a jury being involved, that this statute can just be forgotten, avoided? Because the same statute says, unless a jury is waived by the consent of all parties to the appeal, the appeal must be tried by a jury. Your Honor, that's exactly what it says. I agree. The sentence before also says that it must be tried upon the same notice and in the same manner as other civil actions. What this is saying is that you have the right to a jury on an appeal, just as if you had the right to a jury on an appeal, the same right goes with it. The right to a jury and the right to absolutely carry that through a trial where there's no reasonable evidence upon which a jury could render a verdict are two different things. So is that right there? Forgive me for interrupting, but in order to grant your motion, did the district judge have to decide that no reasonable juror could apportion any value to Mr. Baikie's claims? Correct. Zero. That's what, he did that. Even though this ad runs right through his claims. I think we decided that's uncontested. That's right. The reason why is because of the expert testimony and the lack of evidence on the part of the appellants as to value before our taking as compared to the value after the taking. There was a total failure of proof on their part, but they exercise the right of appeal, go to the jury, can they bring in new evidence at that point, or are they stuck with the evidence that was presented initially? Well, unfortunately, your honor, there's a total lack of Montana case law on this for probably the reason that nobody ever gets this far, to be quite honest. We would take the position, and I think the judge would have been amenable having sat through this trial with the commissioners, that no new evidence should come in. They should reconsider it based on the witnesses that were provided in the discovery that was there. Again, I'm not a miner, but it seems bizarre to me that in a situation where your client's predecessor paid good money on a lease for some period of time for these very things that obviously had some value, and you're spending a whole lot of money, and they're spending a whole lot of money that these things are worthless. Doesn't make any sense to me. Well, keep in mind, your honor, that that lease covered 1,100 claims. These were four of 1,100 claims that were bought for peace in order to be able to proceed with the added end to deter, if there was any mining, any minerals discovered, to deal with those. It is not an admission. That's what the state court found that we think is so wrong, that there was any validity to those claims or anything else. This is how business is done. The fact that you bought peace, now I get that part. You bought peace, but how much was paid for these, what do you say, 1,100? $50,000 a year was the total. For how many years? I think the lease went on for, your testimony, your honor, I'm ten years maybe at the most. All right. It was all, it had expired long before we got to this phase. The, the, back to the question about the jury trial, your honor, the timing issue is, is, is problematic simply because there is a lack of case law, but you get to the same point, which is, does the district court have to sit through this again, even with the, the same, whether there's an ability to bring in new evidence? We went through three years of this, two years of discovery on this case. Mr. Bakey had his deposition taken three times. He had numerous opportunities to come forward that he discovered anything up there by way of gold or whatever, and couldn't do it. So it's, that, and by now he would have if he could. Okay. So. I think, I think we have your argument and unfortunately you're, you're over time. I'm sorry, your honor. Thank you. But we, we thank both counsel for your arguments. It's a very interesting case and it, it, it reminds me of Franz Kafka, the trial. It just goes on and on and on. Anyway. We hope not. Thank you both for your argument. The case just argued is submitted.
judges: D.W. Nelson, M. Smith, Christen